UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARY LOUZI, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-04821 |
| § | |
| FORT BEND COUNTY, TEXAS, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ON DISCOVERY

Before the Court is Plaintiff Mary Louzi's Motion for Order to Show Cause (Doc. 146). The lone issue raised in the motion is whether Defendant Correct Care Solutions (CCS) must produce to Louzi an eight-page report related to the death of her son that CCS contends is privileged under the Patient Safety and Quality Improvement Act (PSQIA).

This issue has germinated for several months, due almost entirely to deficiencies and delays in CCS's submissions. CCS first moved for a protective order in December 2020, asserting several inapposite state-law privileges in an attempt to evade Louzi's subpoena (Doc. 122.) The Court denied that motion orally on January 6 of this year. (Minute Entry of Jan. 6, 2021.) Rather than comply with the subpoena, CCS waited a month and then filed a Motion for Reconsideration (Doc. 135). In that motion, CCS asserted a new range of privileges, including protection under the PSQIA. But CCS tendered no information from which the Court could assess its various privilege claims, so the Court ordered CCS to prepare a privilege log. (Minute Entry of Feb. 24, 2021.) CCS prepared such a log and deemed the contested eight-page report privileged under the PSQIA. Louzi then moved to compel production of the report (Doc. 146).

To establish protection under the PSQIA, CCS "must show that (1) the withheld documents

1

contain patient safety information gathered as part of a [patient safety evaluation system]; and (2) the withheld documents were reported by the provider to its [patient safety officer] without being previously removed from the [patient safety evaluation system] or otherwise disclosed apart from the [patient safety evaluation system]." *Herriges v. County of Macomb*, No. 19-12193, 2020 WL 4726940, at *7 (E.D. Mich. Aug. 24, 2020) (internal quotation marks and citation omitted).

The first prong is easily met here. The Court reviewed in camera the report and is persuaded that it facially satisfies the first prong of PSQIA protection, i.e., that it contains patient safety information.

The second prong—whether CCS sent the report to the PSO without otherwise disclosing it—presents a closer call. There are several troubling aspects of CCS's proof on this issue. For one, CCS offers somewhat contradictory evidence regarding its transmission of the report to its patient safety organization (PSO); the affidavit of CCS employee Durelle Cardiff attests that the report was sent in February 2017, whereas an email from the PSO confirms receipt of the report in December 2017. CCS is unable to account for this discrepancy, other than through an unsworn assertion by its counsel that the report was transmitted to the PSO twice. Still, while this explanation is unsatisfying, the Cardiff affidavit and the PSO representative's email do facially establish that the report was at some point transmitted to the PSO.

The question then becomes whether the report was also disclosed to Defendant Fort Bend County, thereby rendering the PSQIA inapplicable. Louzi points out that Cardiff testified extensively at her deposition about information-sharing procedures between CCS and the County, suggesting that the report may have been shared in the normal course of business. Louzi further notes that the contract between CCS and the County requires CCS to divulge "results of [any] peer review" to the County. (Doc. 155 at 4.) Although the Court is sympathetic to and troubled by both

2

points, they ultimately constitute all smoke and no fire. Indeed, the Court finds more persuasive a point raised repeatedly by counsel for both Defendants: Although the County has engaged in significant discovery and produced numerous documents to Louzi, it never produced, nor does its counsel profess awareness of, the report at issue here. That fact distinguishes this case from *Penman v. Correct Care Solutions*, a case involving CCS in which the contested report was produced not by CCS but by its government partner. *See* No. 5:18-CV-0058-TBR-LLK, 2020 WL 4253214, at *4 (W.D. Ky. July 24, 2020). In short, unlike in *Penman*, the Court has no objective reason to believe that the report was disclosed to any party other than the PSO. Therefore, the Court finds that the PSQIA applies.

Although the Court rules for CCS on this issue, it is left with lingering concerns about CCS's handling of patient information both in this case and more broadly. This is the third case in less than a year in which CCS's attempt to shield information under the PSQIA has come under judicial scrutiny, and the first in which CCS will prevail. *See Herriges*, 2020 WL 4726940, at *8; *Penman*, 2020 WL 4253214, at *4–5. In this case, while CCS's PSQIA privilege claim succeeds, its submissions raise similar questions as in those cases about CCS's commitment to careful handling of patient information and perhaps about the candor of its representations to the Court. That said, the available evidence facially establishes the applicability of the PSQIA, and for that reason Louzi's Motion for Order to Show Cause is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 3rd day of May, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE