United States District Court
Southern District of Texas
**ENTERED**
February 01, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARY LOUZI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:18-CV-04821** |
| | § | |
| **FORT BEND COUNTY, TEXAS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

On January 28, 2022, the Court held a hearing on the Correct Care Solutions, LLC ("CCS") Defendants' Motion for Summary Judgment. The Court took the motion under advisement. It now rules that the motion is **DENIED IN PART** as to the medical malpractice claims and **GRANTED IN PART** as to all other claims. The Court's reasoning is set forth below.

### I.     BACKGROUND

#### A.  Procedural History

Plaintiff Mary Louzi, as the surviving parent and representative of the Estate of Emmanuel Akueir, brought claims against CCS; Matthew Zipprian, individually; Regina Lisiecki, individually; Dallas Ferguson, individually; and Aqeel Hashmi, MD, individually (collectively, "individual medical Defendants")—as well as Fort Bend County, Deputy Kenneth Lewis, Sherriff Troy Nehls, and Lieutenant Grant Crochet—for alleged violations of her son Emmanuel Akueir's civil rights arising from his suicide. CCS is the medical-service contractor at the Fort Bend County Jail.

1 / 12

Fort Bend County, Sheriff Troy Nehls, Deputy Kenneth Lewis, and Lieutenant Grant Crochet filed a motion to dismiss (Doc. 33), and CCS and the individual medical Defendants filed a separate motion to dismiss. (Doc. 34.) The Court issued its Memorandum and Order granting in part, and denying in part, the motions to dismiss. (Doc. 65.) The Court permitted the following to move forward: (i) a § 1983 claim on non-communication against Fort Bend; (ii) a § 1983 claim on deliberate indifference to Akueir's medical needs against CCS and Lisiecki, Zipprian, and Hashmi; and (iii) medical malpractice claims against CCS and Lisiecki, Zipprian, and Hashmi. (Doc. 65, at 16.)

The claims against Lewis, Crochet, and Ferguson were dismissed, along with all custom-based claims aside from the non-communication claim against Fort Bend. Also dismissed were the Texas Wrongful Death Statute ("TWDS"), Texas Tort Claims Act ("TTCA"), and premises liability claims. (*Id.*) All dismissals were *without* prejudice, except as to Lewis and Crochet, who were dismissed *with* prejudice. (*Id.*)

On December 4, 2020, Louzi filed her Third Amended Original Complaint reasserting the claims dismissed without prejudice, including those against individual medical Defendant Ferguson (Dkt. 113.) On January 29, 2021, Fort Bend and Nehls filed their motion for summary judgment (Doc. 133), which the Court granted on July 20, 2021; Plaintiff subsequently filed a motion to reconsider this ruling, which the Court denied. The only remaining defendants are CCS and the individual medical Defendants.

### B.  Summary of Relevant Facts

Plaintiff Mary Louzi brings this case on behalf of her now-deceased son Emmanuel Akueir. On January 3, 2017, Akueir was booked into Fort Bend County Jail after his arrest for armed robbery and evading arrest. (Doc. 133, ¶ 20; Doc. 182-1, Keelin Garvey Expert Report (dated

October 26, 2020), at 6.) At the time of Akueir's incarceration, a Medical Intake Screening was conducted. (Doc. 182-1, at 6.) Jail staff screened Akueir for suicide risk, during which Akueir reported no current or past mental health issues. (Doc. 113 ¶ 29.) On January 5, 2017, Akueir was seen on medical segregation rounds, and Ferguson placed him into Observation for depression. (Doc. 113 ¶ 29; Doc. 182-1, at 7; Doc. 182-2, Harvey Norris Expert Report (dated October 29, 2020), at 5.)

Akueir was seen by Mental Health Professional ("MHP") Dallas Ferguson again on January 6, 2017. Ferguson noted Akueir to be "very tearful." (Doc. 182-2, at 6.) Akueir reported a history of Bipolar Disorder and stated that "when he's in a manic phase, he may not sleep for 1 week," and that "his mood fluxuates *[sic]* equally between manic and depressive episodes." (*Id.*) Akueir denied taking any medications. (*Id.*) He discussed being bullied in elementary school and said he had recently been bullied by an adult in his apartment complex. (*Id.*) He reported a history of being raped at age seven or eight while at school. (*Id.*) He was noted to be "vague about past suicide attempts" and "stated he thinks about it often because he doesn't know how to cope with life situations." (*Id.*) He was noted to deny having current suicidal ideation. (*Id.*) MHP Ferguson described Akueir's mood as "depressed" and his thought content as "depressive"; he assessed Akueir's risk for suicide as "Medium." (*Id.*) MHP Ferguson wrote: "I/M [presumably, inmate] was encouraged to contact the [Mental Health] department if he had any future MH complaints or concerns. (*Id.*) ATC was explained. Follow-up upon request or referral." Ferguson did not indicate any acknowledgement that Akueir was on Observation Status at that time. (*Id.*) Mr. Ferguson referred him to the psychiatrist for further evaluation. (*Id.*)

Akueir was seen on January 7, 2017, by MHP Regina Lisiecki. (Doc. 113 ¶ 29; Doc. 182-1, at 7; Doc. 182-2, at 6.) As a Licensed Professional Counselor Intern, Lisiecki had to practice

under an individual who was fully and independently licensed. (Doc. 182-2, at 6.) Lisiecki noted

that Akueir had been on a staggered 15-minute watch that was initiated on January 5, 2017. (Doc.

182-2, at 6.) To assess Akueir, Lisiecki used the Columbia Suicide Severity Rating Scale in her

assessment—but only a check-box form, rather than the complete assessment—and marked "No"

on each of Akueir's answers. (Doc. 182-1, at 7.) Lisiecki documented the rationale for

discontinuing Akueir's suicide watch as "I/M denies feeling depressed. I/M denies any current

thoughts to hurt self or others." (Doc. 182-2, at 6.) There is no evidence that she shared her

assessment with her supervisor. (*Id.*) It appears Lisiecki took Akueir off Observation status

altogether rather than downgrading him to less frequent checks, apparently in violation of CCS's

Suicide Prevention Program Policy.[1] (Doc. 182-1, at 15-16.)

A timeline provided by Defendants indicates that Akueir was seen for medical segregation

rounds on January 5, 6, 7, 8, and 9 of 2017. (Doc. 182-1, at 7.) There is no evidence of notes

containing any specific information or observations recorded during these contacts. (*Id.*) MHP

Ferguson saw Akueir again on January 9, 2017, for a follow-up to his recent Observation

placement; Akueir reported feeling better at that time. (*Id.*)

The same timeline indicates that on January 10, 2017, MHP Zipparian reviewed Akueir's

chart and designated him as a Mental Health Level 4 (indicating he is a high functioning mental

---

[1] Plaintiff's expert, Dr. Garvey, concluded that the policy, effective as of February 16, 2016, states: "It is expected that patients placed on 15-minute watches would be moved to 30-minute watches before being taken off suicide precautions." However, records indicate Akueir was immediately taken off Observation status without having been downgraded to less frequent checks. (Doc. 182-1, at 15-16.)

Further, under the policy, Akueir's placement on 15-minute checks qualified him for Level II status. CCS's Suicide Prevention Program Policy states that "Removal from a Level II status requires consultation between the mental health staff member assigned to the case and the psychiatrist. The psychiatrist may choose to conduct a face-to-face evaluation with the patient. The mental health staff member will document the consultation with the psychiatrist in the patient's health record." If this consultation did in fact take place, it was not documented in the chart. (*Id.* at 15.)

health patient). (*Id.*) No evidence has been presented to confirm that he reviewed Akueir's chart or documented such review. (*Id.*)

Psychiatrist Dr. Aqeel Hashmi saw Akueir on January 11, 2017. Akueir reported a history of self-injurious behaviors and "multiple previous suicide attempts." (*Id.*) Akueir said he felt anxious at times but was otherwise feeling well and denied the need for psychiatric treatment. (*Id.*) He denied complaints of any significant mood/anxiety or psychotic symptoms.  (*Id.*) He denied any active thoughts of wanting to harm himself or others. (*Id.*) Dr. Hashmi diagnosed him with Adjustment Disorder and opined that Akueir "does not appear to need psychiatric treatment at this time." (*Id.* at 7-8.) There was no reference to any future mental health assessments or contacts. (*Id.* at 8.)

Akueir was thus placed into the general population for 17-year-old (juvenile) inmates. (Doc. 113 ¶ 29; Doc. 182-1, at 7; Doc. 182-2, at 8.) On January 14, 2017, Akueir received a disciplinary conduct citation for disrupting security by "throwing and spitting water at other inmates." (Doc. 113 ¶ 29; Doc. 182-2, at 8.) On January 23, 2017, the disciplinary board found Akueir guilty of the charge of throwing and spitting water; it assessed a penalty of 30 days of lockdown (disciplinary segregation) and ordered a loss of privileges. (Doc. 113 ¶ 29; Doc. 182-1, at 18.) At 9:57 AM on January 25, 2017, Jail staff escorted Akueir to the disciplinary segregation unit, a block of twenty single-unit housing barred cells on the second floor of the jail's East Tower. (Doc. 113 ¶ 29.) The next day, by 6:10 PM, Akueir had committed suicide by hanging himself in his cell with his bedding. (Doc. 113 ¶ 5; Doc. 182-5.)

## II.      MOTION FOR SUMMARY JUDGMENT

The Court address Plaintiff's § 1983, medical malpractice, and other state-law claims in turn.

5 / 12

### A. *§ 1983*

The Court must apply different analyses to CCS as an entity on the one hand, and to the individual medical Defendants on the other.

### 1. *CCS (*Monell*)*

Under *Monell*, an entity may be held liable for a § 1983 claim if it has a policy or custom that causes the violation of a plaintiff's rights at issue. *Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Fifth Circuit undertakes the *Monell* analysis by requiring three showings: "(1) an official policy (2) promulgated by the [] policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Absent a written policy, a plaintiff may also point to a "widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents [] policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

Plaintiff argues that CCS is liable under *Monell* for three reasons: (1) it has a practice and custom of failing to communicate with Fort Bend County jail staff, (2) it committed the "episodic act or omission" of failing to properly care for Akueir, and (3) it consciously decided not to enact an acceptable policy. The Court finds each of these grounds unavailing.

First, to prove a non-communication custom, Plaintiff must show a "pattern of similar violations" that involve facts "fairly similar to what ultimately transpired" in her own case. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009) (holding that a plaintiff failed to establish deliberate indifference where he offered no "evidence that the [alleged custom] had caused serious injuries on previous occasions"). Louzi does not point to even a single prior incident in which a

lack of communication on CCS's part caused an injury. Because Louzi has conceded an absence of violations involving circumstances fairly similar to those involved in her son's tragic death, this Court has no colorable basis for finding *Monell* liability on this ground.[2]

Second, Plaintiff points to *Gann v. Montgomery Cty.* for the proposition that ignoring the applicable policy and putting the plaintiff in an inappropriate cell due to his suicidal ideations should be classified as an "episodic act[] or omission[.]" No. 4:14-CV-01575, 2016 WL 10807190, at *7 (S.D. Tex. Sept. 27, 2016). Plaintiff fails to clarify how this ground for *Monell* liability would apply to CCS, which was not the entity that placed Akueir in the general population or in solitary confinement.

Third, Plaintiff can cite only *Seventh* Circuit authority for its proposition that "an entity may be held liable under *Monell* if an institution's policies themselves are deliberately indifferent to a detainee's needs by choosing not to have an appropriate policy in the face of a known problem that could be solved by an updated policy." The Court is bound by the Fifth Circuit's stricter requirements, as discussed above.

Accordingly, the Court must **GRANT** summary judgment as to the § 1983 claim against CCS as an entity.

### 2. *Individual Medical Defendants*

Deliberate indifference is an extremely high standard to meet in this Circuit. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "To demonstrate deliberate indifference, a plaintiff must show that public officers were aware of facts from which an inference of a substantial risk of

---

[2] To the extent that Plaintiff maintains that her claims against CCS might give rise to "single-incident liability" *see Sanders-Burns*, 594 F.3d at 382, the "single-incident exception is extremely narrow" and has been rejected even in cases far more egregious, and involving far more concrete evidence of obvious dangers, than this one. *See*, *e.g.*, *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010).

serious harm to an individual could be drawn; that they actually drew the inference; and that their response indicates subjective intention that the harm occur." *Sanchez v. Young Cty., Texas*, 866 F.3d 274, 280 (5th Cir. 2017) (citing *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

A claim of deliberate indifference toward serious medical needs has two elements. First, Louzi must demonstrate deliberate indifference, which in this context requires showing that the individual medical defendants were "aware of a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). Second, Louzi must demonstrate that the individual medical Defendants "disregarded the substantial health risk about which [they] knew," which requires showing that the defendants "purposefully neglected [Akueir's] medical needs." *Id.* at 349. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* at 347. Likewise, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Id.* A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

As to the first element, Plaintiff has presented evidence—including the timeline that the County itself provided—showing that the Ferguson's initial note on Akueir reported his history of Bipolar Disorder, including manic and depressive episodes; his history of trauma; and his "vague(ness)" about suicide attempts. Later notes would include information on his previous self-injurious behaviors and Adjustment Disorder while in custody, as diagnosed by Dr. Hashmi. The individual medical defendants have not suggested—nor, presumably, would they wish to—that

they did not review these medical records when they saw Akeuir at various points. There is a genuine issue of material fact regarding this element.

However, there is no genuine dispute as to the second element, purposeful neglect. Plaintiff has presented no evidence, whether deposition testimony or otherwise, that the individual medical Defendants subjectively intended for Akueir to commit suicide. While evidence suggests that they may have been negligent in assessing Akueir's condition or providing additional treatment, binding caselaw has explicitly foreclosed deeming such failures acts of deliberate indifference. *Gobert*, 463 F.3d at 347.

Thus, even viewing the facts in the light most favorable to Plaintiff as the non-movant, the Court must **GRANT** summary judgment as to the § 1983 claim against individual medical Defendants.

### B.  *Medical Malpractice (All Defendants)*

Louzi also brings a claim for medical malpractice against the individual medical Defendants, as well as CCS under a theory of *respondeat superior*. To prevail at trial on his claim of medical malpractice, it is Louzi's burden to establish a "reasonable medical probability" that the CCS Defendants' acts or omissions proximately caused Akueir's alleged injuries. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995); *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). Meeting that burden requires proof of the following elements: (1) that Defendants had a duty to comply with a specific standard of care; (2) that Defendants breached that standard of care; (3) that Akueir was injured; and (4) that there was a causal connection between the breach of the standard of care and the injury. *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

In Texas, jail medical staff owes a standard of care to suicidal inmates. *Kassen v. Hatley*, 887 S.W.2d 4, 12 (Tex. 1994). That standard of care is breached when a medical defendant negligently fails to take appropriate action when an inmate's suicide was foreseeable. *Id.* at 13. The Court concludes that Plaintiff presents a genuine issue of material fact as to each of the elements: First, the individual medical Defendants owed Akueir a duty to comply with a specific standard of care as discussed in *Kassen*. Second, Plaintiff's experts conclude that the individual medical Defendants breached that duty by allowing him to be discharged from medical monitoring despite a history of serious mental illness, self-injurious behavior, and multiple previous suicide attempts. Third, Akueir tragically killed himself. And finally, Plaintiff's evidence suggests a reasonable likelihood that he would not have done so had he remained under medical monitoring and benefited from a more responsive medical treatment plan.

With respect to the last element (a causal connection), Defendants argue that Plaintiff can show neither cause in fact nor foreseeability. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). They dedicate a substantial portion of their briefing to emphasizing that the solitary confinement, which was ordered by the jail staff rather than the CCS Defendants, was the cause in fact of Akueir's suicide. They further argue that there was no evidence that Defendants could foresee the suicide.

The Court finds both points unconvincing. Akueir may never have entered the general population (and later solitary confinement) in the first place if he were under medical monitoring appropriate for his documented mental health condition. Moreover, a jury could reasonably find that trained medical professionals could foresee a suicide attempt under circumstances like these (e.g., past suicide attempts, past self-injury, a history of rape and bullying, diagnosis with Adjustment Disorder, the custodial setting, etc.).

Therefore, the Court **DENIES** the MSJ as to the medical malpractice claims against both the individual medical Defendants and CCS via *respondeat superior*.

1.   *Jurisdiction Over the Medical Malpractice Claims*

While the elimination of the federal § 1983 claims gives the district court "a powerful reason to choose not to continue to exercise jurisdiction," the district court's decision to retain, dismiss, or remand the remaining supplemental claims is discretionary. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343 (1988). In making this decision, the federal court should take into consideration convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966)

Here, the Parties have been litigating this matter for over three years, including completing discovery on events that occurred over five years ago. The medical malpractices claims are not so novel as to warrant the added time and expense inherent in a remand to state court. Thus, the Court exercises its informed discretion to retain jurisdiction over the medical malpractice claims.

**C.  *TWDS, TTCA, and Premises Liability (All Defendants)***

The Court dismissed these claims without prejudice at the motion-to-dismiss stage. Plaintiff reasserts the claims in her Third Amended Complaint but has not briefed these claims at all in either her Response or Surreply regarding this motion. The Court deems these claims waived. The Court therefore **GRANTS** summary judgment in favor of the CCS Defendants as to the TWDS, TTCA, and premises liability claims.

\*       \*       \*

For the reasons above, the Court **DENIES** the Motion for Summary Judgment as to the medical malpractice claims against both CCS and the individual medical Defendants. It **GRANTS** summary judgment in favor of Defendants as to all other claims.

Trial will proceed as scheduled on February 28, 2022. The Court is strongly disinclined to grant any continuances given the numerous delays that have occurred in this longstanding case.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on February 1, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

12 / 12